**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **THE LUO GROUP, LLC, D/B/A** | ) | |
| **TAGO INTERNATIONAL CENTER,** | ) | |
| **GODFREY TAGO** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO:** |
| | ) | **1:21-CV-02588-MHC-RDC** |
| **V.** | ) | |
| | ) | |
| **ANDREW PERKEL, SC APARTMENTS** | ) | |
| **LLC, D/B/A BOLTON VILLAGE,** | ) | |
| **LANDLOCKED, LLC, D/B/A BOLTON** | ) | |
| **VILLAGE** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## BRIEF IN SUPPORT OF
## MOTION TO DISMISS

Defendants SC Apartments, LLC d/b/a Bolton Village and Landlocked, LLC

d/b/a Bolton Village (the "Corporate Defendants") respectfully ask the Court to dis-

miss multiple claims under Fed. R. Civ. P. 12(b)(6) as follows:

### I.    Introduction

This federal lawsuit was filed shortly after the Corporate Defendants initiated

state-law eviction proceedings against The Luo Group, LLC d/b/a Tago International

Center ("Tago International") and sought to repossess the commercial space the

1

Corporate Defendants rented to Tago International.  *See SC Aaprtments LLC d/b/a Bolton Village et al. v. The Luo Group LLC d/b/a Tago International Center et al.*, Magistrate Court of Fulton County, No. 21ED185011.  The Corporate Defendants began those eviction proceedings because Tago International violated its Retail Lease, Tago International potentially violated applicable law, Mr. Tago (Tago International's principal) threatened violence against Defendant Andrew Perkel, and Mr. Tago made virulently anti-Semitic remarks against Mr. Perkel, a Jewish American. Plaintiffs now seek to recast a commercial tenancy dispute into something else, attempting to invoke both federal civil rights law and state remedies to avoid eviction.

But these overarching problems are not the only difficulties that Plaintiffs' case faces.  Rather, specific pleading problems plague the <u>Complaint</u>.  First, the <u>Complaint</u> is a shotgun pleading.  Every one of its first seven counts incorporates not only 149 pages of pleaded facts, but all prior *legal allegations*.  This makes responding to any of those counts difficult, but it renders it impossible for the Corporate Defendants to respond especially to the first three counts of the Complaint (for Section 1981 violation, Section 1981 retaliation, and state-law breach of contract, respectively).  Pursuant to Eleventh Circuit guidance on shotgun pleadings like this, the Court should dismiss Counts I, II, and III against the Corporate Defendants without prejudice so that they can replead those Counts.  After repleading, the Corporate

Defendants reserve the right to move to dismiss those claims for substantive failure to state a claim.

Substantively, Plaintiff Godfrey Tago (individually) cannot state a claim under Section 1981 or for breach of contract, because he was not a signatory to the agreement between the Corporate Defendants and Tago International. Mr. Tago's claims under Count I, II, and III should be dismissed with prejudice. Both Plaintiffs' claims for state-law retaliation (Count IV) should be dismissed with prejudice as well, because they seemingly rely on a state-law retaliation provision that protects only *residential* tenants. Both Plaintiffs' claims for tortious interference with contract (Count VII) should be dismissed, because no Defendant was a stranger to any contract or business relationship identified in the <u>Complaint</u>. And Mr. Tago's claim for attorneys' fees (Count VIII) should be dismissed, because Mr. Tago suffered no individual Section 1981 violation, nor did he suffer an individual breach of contract. Yet civil-rights statutes and the Retail Lease are the only two sources of attorney's fees that the Complaint cites, so Mr. Tago has no remaining vehicle to assert his personal entitlement to attorney's fees.

Plaintiffs' Complaint suffers from a variety of infirmities, and this Court should dismiss the portions described above.

## II.   Background

Defendants dispute many of Plaintiff's characterizations, but at this stage, the Court must "assume the veracity" of "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). So viewed, this case arises from a rental agreement that Plaintiff The Luo Group, LLC d/b/a Tago International Center ("Tago International") executed with the Corporate Defendants. Complaint ¶ 11. Plaintiff Godfrey Tago ("Mr. Tago") controls Tago International. *Id.* ¶ 11.

In short, Plaintiffs claim that Tago International signed a Retail Lease with the Corporate Defendants, for which Defendant Andy Perkel was the landlord.[1] Plaintiffs do not allege that Mr. Tago was a party to this Retail Lease or that he had the power to enforce it. *See id.* That allegation (or lack thereof) is accurate, because Mr. Tago was merely a guarantor to Tago International's agreement.

Tago International alleges that it was promised certain accommodations that appear nowhere in the Retail Lease (even though the Retail Lease contains a merger clause) and that the Corporate Defendants generally failed to provide a space that met Tago International's unwritten expectations for its events. *See* Complaint ¶¶ 26-

---

[1] Perkel executed a waiver of service and must respond to Plaintiffs' Complaint by August 30, 2021. He will respond accordingly, and this Motion is filed only by the Corporate Defendants and addresses only their grounds for dismissal or repleading of the claims asserted against them.

40. Tago International also alleges that the Corporate Defendants failed to take actions that the Retail Lease specifically state the Corporate Defendants need not take. *Compare* Complaint ¶ 41 (quoting paragraph from Residential Lease specifically providing that the landlord need not repair windows and glass), *with* Complaint ¶ 42 (criticizing Corporate Defendants for not repairing windows and glass).

More troublingly, Plaintiffs also accuse Mr. Perkel of making racist comments and acting in a racially biased manner. *See, e.g.*, Complaint 77, 79. Similar accusations are littered piecemeal throughout the Complaint. Perkel vigorously disputes these accusations. In fact, factfinding (if needed) will show that Mr. Perkel never made these comments, while *Mr. Tago* made virulently anti-Semitic remarks to Mr. Perkel, a Jewish American. Nonetheless, the Corporate Defendants address the allegations presented in the Complaint, showing that many of them must be re-pleaded and that even given the Complaint's shotgun nature, some claims fail under Rule 12(b)(6) and should be dismissed with prejudice.

## III.   Argument and Citation of Authority

### A. Standard of Review

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *Redland Co. v. Bank of Am. Corp*., 568 F.3d 1232, 1234 (11th Cir. 2009) (affirming district court's dismissal of claim) (citing case).  Moreover, only well-pleaded *facts* may thwart dismissal under Rule 12(b)(6). That is, the Eleventh Circuit Court of Appeals mandates that district courts "eliminate any allegations in the complaint that are merely legal conclusions" before deciding a motion to dismiss.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

### B. Plaintiff's shotgun pleading should be dismissed.

Plaintiffs' <u>Complaint</u> is a quintessential shotgun pleading and should be dismissed on those grounds alone.  Plaintiffs allege 149 paragraphs of jurisdictional and factual background before reaching their actual causes of action, which essentially just re-incorporate the prior allegations. Every cause of action incorporates all preceding paragraphs, including those comprising other causes of action.  Doc. No. 1 at 36, 37, 38, 40, 41, 43, 44.

The Eleventh Circuit has explicitly rebuked this kind of pleading.  Judge Tjoflat summed up the problem:

> [A] plaintiff kicks things off with a shotgun pleading, where each count
> . . . adopts the allegations of all preceding counts. Consequently, alle-
> gations of fact that may be material to a determination of count one, but
> not count four, are nonetheless made a part of count four . . . . [I]t is
> virtually impossible to know which allegations of fact are intended to
> support which claim(s) for relief.

*Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014).  And the

Circuit has prescribed strong medicine as a remedy—including dismissal under Rule

12(b)(6) after a warning of the Complaint's deficiencies.  *Id.* ("A defendant served

with a shotgun complaint should move the district court to dismiss the complaint

pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) . .

. .") (footnote omitted).  In recent years, the Circuit has emphasized that courts

should order a litigant to re-plead shotgun complaints before other action is taken in

the case, and it has emphasized that after a litigant receives an opportunity to amend,

shotgun pleading is a valid basis for dismissal. *Vibe Micro, Inc. v. Shabanets*, 878

F.3d 1291, 1295-96 (11th Cir. 2018) (discussing district court's right to dismiss com-

plaint after warning of deficiencies and offering one *sua sponte* chance to replead).

If the Court finds that a complaint constitutes a shotgun pleading, it should not even

reach the substantive merits of the purported causes of action. *Doe v. Pierce County,

Georgia*, No: 5:19-cv-5, 2019 WL 1937577, at *3 (S.D. Ga. May 1, 2019) ("…the

Court, after reviewing Plaintiff's Complaint, finds that the Complaint is a shotgun

pleading, and as such, the Court does not reach the merits of Defendants' challenges

to the Complaint in their Motions to Dismiss").

Plaintiffs' <u>Complaint</u> violates the anti-shotgun-pleading directive, because it incorporates nearly 150 paragraphs of facts—as well as every preceding legal allegation—into each subsequent count of the <u>Complaint</u>.  While problematic for all counts, this failure renders the Corporate Defendants especially unable to adequately respond to Count I (Contract Discrimination in Contravention of Section 1981); Count II (Retaliatory Racial Discrimination in Contravention of Section 1981); and Count III (Breach of Contract).  By incorporating all pleaded facts and all prior pleaded counts into each of these sections, it is impossible to guess which acts Plaintiffs claim breached any contract, which acts reflected impermissible racial animus, and which acts sparked alleged improper retaliation.  *See, e.g.*, *Mensah v. Baxalta US Inc.*, No. 118CV05013CAPLTW, 2020 WL 1452988, at *2 (N.D. Ga. Feb. 19, 2020), *appeal dismissed,* No. 20-11111-JJ, 2020 WL 3409113 (11th Cir. Apr. 30, 2020) (noting that Complaint asserting Section 1981 and Section 1981 retaliation claims was shotgun pleading).  Given that multiple theories of liability under Section 1981 exist, and multiple contractual duties could conceivably exist under a 28-page-plus Retail Lease Agreement, there is no way to adequately respond to these counts as currently pleaded.  To be clear, it seems likely that Plaintiffs' Section 1981 claims are substantively defective and susceptible to dismissal under Rule 12(b)(6),

including but not limited to a failure to properly plead causation, but it is impossible to understand the scope of those claims and confirm their substantive defects as the Complaint is currently drafted.

This Court should dismiss this action under Rule 12(b)(6) after providing the needed warning under *Vibe Micro* in accordance with Eleventh Circuit law.  In the alternative, it should require Plaintiffs to re-plead their Complaint so that the basis for the Section 1981 counts and breach of contract claim are clear and do not re-incorporate all other paragraphs

### C. Plaintiff Godfrey Tago does not state claims under Section 1981 (Counts I and II).

As shown above in Section III.B, it is currently impossible to determine whether Plaintiff Tago International states a claim against the Corporate Defendants under Section 1981 because the Complaint is an impermissible shotgun pleading. However, even given the flaws in the Complaint, it is clear that Plaintiff Godrey Tago (as an individual) fails to state any claims under Section 1981, because he lacked any contractual relationship with Defendants.

A plaintiff has no rights under Section 1981 unless he has, or would have, rights under an existing, or proposed, contract that he wishes "to make and enforce." In other words, Section 1981 plaintiffs must identify injuries flowing from a racially

motivated breach of their own contractual relationship, not of someone else's.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). In *Domino's Pizz*a, the Court held that a Plaintiff cannot state a § 1981 claim unless he has, or would have, 42 U.S.C.A. § 1981.  Following the oft-cited *Domino's Pizza* precedent, the Eleventh Circuit has likewise held that "[t]o state a claim under § 1981 for interference with a right to contract, a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1309 (11th Cir. 2010) (cleaned up).  *See also Middlebrooks v. Experian Info. Sols., Inc.,* No. 1:20-CV-2279-SCJ-JSA, 2020 WL 9600586, at *5 (N.D. Ga. Nov. 3, 2020) ("The absence of a contractual relationship deprives § 1981 from providing a remedy in this case.").

This principle is fatal to Mr. Tago's purported Section 1981 claim, because he is not a party to the Retail Lease—only a guarantor of it.  But a guarantor "may not step into the company's shoes to assert legal rights despite their position as guarantors" of the agreement. *Beasley v. Arcapita, Inc.*, No. CV RDB 08-804, 2008 WL 11358078, at *3 (D. Md. Oct. 27, 2008), *aff'd*  436 F. App'x 264 (4th Cir. 2011). Courts nationwide agree.  *See also The Guidelines, LTD. v. Yarmouth Group Property Mamt., Inc.*, 295 F.3d 1065 (10th Cir. 2002) (rejecting plaintiff's claim that, as a guarantor of the corporation's lease, she could assert a § 1981 claim in her

10

individual capacity); *Greene v. Aaserud*, 2004 U.S. Dist. LEXIS 4166 (D. Minn. Mar. 16, 2004) (holding that the sole shareholder of a corporation, who had guaranteed the lease at issue, had no standing to assert a § 1981 claim).  And that makes sense—guarantors exist only to provide a backup source of funding for a company that is not a sure bet, not as an additional party that can assert contractual rights.

Here, Plaintiffs' <u>Complaint</u> accurately notes that Mr. Tago signed the relevant Retail Lease "on behalf of his business, The Luo Group LLC D/B/A Tago International Center ('Tenant')." <u>Complaint</u> ¶ 11.  Tago International is the only party with contractual rights under the Retail Lease.  *See, e.g.*, *Beasley*, 2008 WL 11358078, at *3.  And given Mr. Tago's lack of standing to enforce Tago International's contract, he can assert no Section 1981 claims.  *Jimenez*, 596 F.3d at 1309.  Moreover, even if Mr. Tago asserted Section 1981 claims because he thought Tago International could enter into other, new contracts, <u>Complaint</u> ¶155, he never pleads that he would be a signatory to those contracts.

Accordingly, when the Court dismisses Plaintiffs' Complaint with orders to replead at least Counts I, II, and III against the Corporate Defendants, it should dismiss Mr. Tago's claims under Section 1981 (Counts I and II) with prejudice for failure to state a claim.

### D. Plaintiff Godfrey Tago does not state a claim for breach of contract because he was not a party to the Retail Lease.

Plaintiff's <u>Complaint</u> appears to acknowledge that Mr. Tago has no individual claim for breach of contract. *See* <u>Complaint</u> ¶ 162 (pleading in "breach of contract" section that "Defendants and The Tago International Center entered a valid, enforceable retail lease agreement."

However, it is not pellucid that Count III is brought *only* by Tago International, and to the extent Mr. Tago attempts to state an individual claim for breach of contract against the Corporate Defendants, that claim must be dismissed with prejudice under Rule 12(b)(6). Under Georgia law, unless a contract explicitly provides that a non-party to the contract has rights to enforce it, that third party cannot sue for breach of the agreement. "As a general rule, an action on a contract, whether the contract is expressed, implied, by parol, under seal, or of record, shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent." *Davis v. Phoebe Putney Health Sys., Inc.*, 280 Ga. App. 505, 508, 634 S.E.2d 452, 455 (2006) (citing prior case).

Here, Mr. Tago does not plead that he has a contractual right to enforce any purported element of the contract between Tago International and the Corporate Defendants. He thus cannot maintain any claim for breach of contract, and the Court

should dismiss any breach-of-contract claim that Mr. Tago individually brings against the Corporate Defendants with prejudice.

### E.  No Plaintiff states a claim for Retaliation under Georgia law pursuant to O.C.G.A. § 44-7-13 or correlated statutes (Count IV).

Plaintiffs do not state a claim for retaliation under Georgia law against any Corporate Defendant, because the code section to which Plaintiffs refer only provides a remedy for retaliation against a *residential* tenant.

Plaintiffs' Complaint does not provide a precise statutory anchor for Count IV ("Retaliation"), but it seems likely they invoke Section 44-7-24 ("Residential tenant; prima-facie case of retaliation") because they cite Section 44-7-13 as part of Count IV.  Complaint ¶ 171.  Indeed, Section 44-7-13 is the *only* section cited within Count IV, and there is no indication that the remedy Plaintiffs invoke comes from outside the chapter containing it.

But the retaliation provision contained in Section 44-7-24—the only one present in Title 44, Chapter 7—only applies to residential renters.  Here is the first and operative clause of the statute:

> A residential tenant establishes a prima-facie case of retaliation by demonstrating that he or she took an action under subsection (b) of this Code section relating to a life, health, safety, or habitability concern and by demonstrating that his or her landlord took an action under subsection (c) of this Code section.

13

O.C.G.A. § 44-7-24(a).  The statute's plain language demonstrates that it only applies to residential leases—and when plain language is clear, that language ends the inquiry.  *See, e.g.*, *Moffitt v. State*, 857 S.E.2d 264, 266 (Ga. Ct. App. 2021) (citing prior case and holding that "we must always presume that the General Assembly means what it says and says what it means, and an unambiguous statute must be afforded its plain meaning."); *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1276 (11th Cir. 2020) ("We first determine whether the language at issue has a plain and unambiguous meaning, and, if so, we need go no further.") (cleaned up) (citing case). Another statute in Title 44, Chapter 7 defines "Residential rental agreement" as "a contract, lease, or license agreement for the rental or use of real property **as a dwelling place.**"  O.C.G.A. § 44-7-30(2) (emphasis added).  Section 44-7-24's anti-retaliation language is therefore unambiguous:  it only proscribes retaliation in the residential-lease context.  Because the provision is plain, no further interpretation is required.[2]  The Court should dismiss Count IV with prejudice, because the retaliation

---

[2] Even if the Court looked to the policies behind the section—which it should not, given the clear language of the text—Georgia law openly applies different standards to residential and commercial leases.  Georgia law is well-established that in a commercial lease, the parties are free to contract as to their various responsibilities for repair, maintenance and improvements. *Baird v. Kelley*, 250 Ga. App. 393, 551 S.E.2d 810 (Ga. App. 2001).  Indeed, as *Baird* makes clear, when the main purpose of a lease is to provide commercial space (rather than a residential dwelling),

provision Plaintiffs seemingly invoke could not apply to the subject lease under any pleaded factual circumstances.

### F.  Plaintiffs fail to state a claim for tortious interference because these Defendants were not strangers to the asserted relationship.

Plaintiff's claim for tortious interference with business operations fails because the Corporate Defendants were not "strangers" to the business relationship.

To recover for tortious interference, "it is essential . . .  that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered."  *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998).  Importantly, an entity "is not a stranger to the contract just because [it] is not a party to the contract . . . ."  *Id.*  In fact, the definition of a "stranger" is narrow and excludes recovery for *anyone* (or any entity) with an interest in the transaction.  "[O]ne must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. In other words, all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships."  *Lyman v. Cellchem Int'l, LLC*, 335 Ga. App. 266, 268, 779 S.E.2d 474, 478 (2015), *rev'd sub*

---

multiple statutory protections no longer apply, and the parties instead are governed by their written contract.  *Id.*

*nom. on other grounds by Lyman v. Cellchem Int'l, Inc.*, 300 Ga. 475, 796 S.E.2d 255 (2017).

This general maxim takes on new meaning in the business world, where interlocking companies and ownership interests frequently participate in the same deal. *None* of the entities interested in a transaction are strangers to that transaction, and none of them can tortiously interfere with that transaction as a matter of law. For example, in *Lyman v. Cellchem Int'l, LLC*, the Court of Appeals held that a manager who "had a direct relationship with Cellchem's customers and received benefit in the form of payment for her work" could not be a stranger to a transaction involving Cellchem. *Lyman*, 335 Ga. App. at 270, 779 S.E.2d at 479. In fact, in *Lyman*, the Court of Appeals held that the owner of a company that owned *another* company that participated in the subject transactions was not a stranger. *Id.* at 270-71, 779 S.E.2d at 480 (describing interaction between Shekoy Chemicals US, Inc., Jiangsu Yoke Technology Company Limited, and the appellee).

These same principles apply with equal force in the context of lease agreements and sublease-style agreements arising from them. When a business relationship arises from the interaction of "lessor/lessee/sublessee," the overarching lease agreement "create[s] the legal right of sublease relied upon by [the sublessee] to support its claim of entitlement to sublease," and a sublessee's right to use the space

16

is "inextricably a part of the predominant leasing relationship between the landlord
. . . and its tenant . . . ." *Renden, Inc. v. Liberty Real Est. Ltd. P'ship III*, 213 Ga.
App. 333, 335, 444 S.E.2d 814, 818 (1994). That basic principle defeats recovery,
because to "sustain a claim for intentional interference with business relations, the
tortfeasor must be an "intermeddler" acting improperly and without privilege." *Id.*
(citing case). Similarly, Georgia courts have unambiguously held that when two
parties contract, one party's purported breach of that contract does not constitute
tortious interference with the other party's relationship with "its consumers." *Cook
Pecan Co., Inc. v. McDaniel*, 344 Ga. App. 370, 374–75, 810 S.E.2d 186, 190–91
(2018). And the doctrine extends to parties involved in the underlying contract:
"Nor does the fact that a defendant did not sign the contract preclude a finding that
he was no stranger to the contract. In sum, all parties to an interwoven contractual
arrangement are not liable for tortious interference with any of the contracts or busi-
ness relationships." *Id.*

Here, Plaintiff alleges that both Corporate Defendants were parties to the Re-
tail Lease that initially gave Tago International the right to occupy the Property.
Complaint ¶ 11. The contractual rights that Tago International purportedly received
under that Retail Lease are the basis for Plaintiff's tortious interference claims. *Id.*
¶¶ 187, 190. Whether the entities renting the Property for events are viewed as

sublessees, *see Renden*, 213 Ga. App. at 335, 444 S.E.2d at 818, or as consumers, *see Cook Pecan*, 344 Ga. App. at 374–75, 810 S.E.2d at 190–91, the result is the same:  the Corporate Defendants are not strangers to Tago International's relationships with those sublessees/consumers and cannot be held liable for tortious interference with contract.  This claim must be dismissed.

### G. Plaintiff Godfrey Tago does not state a claim for attorneys' fees because his individual civil rights claims fail, and no Plaintiff states a claim for attorneys' fees under 42 U.S.C. 2000-5(k).

Plaintiff Godfrey Tago's claim for attorneys' fees should fail, because as shown above, he has no personal Section 1981 claims or claims for breach of contract.  These are the only sources of potential attorneys' fees that Count VIII identifies, so Mr. Tago's prayer for attorney's fees must be dismissed.  Moreover, Plaintiffs do not plead that any Plaintiff had an employment relationship with any Defendant, so all Plaintiffs' claims for attorneys' fees under 42 U.S.C. § 2000-5(k) should be dismissed.

## IV.   Conclusion

For the foregoing reasons, the Court should:

- Dismiss Mr. Tago's claims under Count I, II, III, IV, VII, and VIII against the Corporate Defendants with prejudice;

- Dismiss Tago International's claims under Count IV and VII, and its claim for attorneys' fees under 42 U.S.C. § 2000-5(k), with prejudice; and

- Dismiss all remaining claims within the <u>Complaint</u> without prejudice pursuant to the Eleventh Circuit's guidance in *Vibe Micro*, 878 F.3d at 1296, for repleading, since the <u>Complaint</u> is an impermissible shotgun pleading.

Respectfully submitted, this 21st day of July, 2021.

<div style="margin-left: 50%;">

BOUHAN FALLIGANT LLP

<u>/s/ Lucas D. Bradley</u>
LUCAS D. BRADLEY
Georgia State Bar No. 672136
VANDANA MURTY ABRAMS
Georgia State Bar No. 158799
*Attorneys for Defendant*

</div>

One West Park Avenue (31401)
Post Office Box 2139
Savannah, Georgia  31402-2139
(912) 232-7000 - telephone
(912) 233-0811 - fax
ldbradley@bouhan.com
vmabrams@bouhan.com

*Tago et al. v. Perkel et al.*, 1:21-cv-02588-MHC-RDC, July 21, 2021.

19

## LOCAL RULE 5.1 CERTIFICATE OF COMPLIANCE

I, Lucas D. Bradley, certify that pursuant to Local Rules 5.1 and 7.1(D), this brief was prepared using Times New Roman 14-point font and that all text except for block quotations, caption block, signature block, and footnotes is double-spaced. This Brief in Support of Motion to Dismiss complies with L.R. 5.1's formatting requirements.

This 21st day of July, 2021.

BOUHAN FALLIGANT LLP

/s/ Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136
VANDANA MURTY ABRAMS
Georgia State Bar No. 158799
*Attorneys for Defendant*

One West Park Avenue (31401)
Post Office Box 2139
Savannah, Georgia  31402-2139
(912) 232-7000 - telephone
(912) 233-0811 - fax
ldbradley@bouhan.com
vmabrams@bouhan.com

## CERTIFICATE OF SERVICE

I, Lucas D. Bradley, certify that I have today filed the foregoing through the Court's CM/ECF filing system, which will cause notice to be sent to all counsel of record through the NEF system.

This 21st day of July, 2021.

BOUHAN FALLIGANT LLP

/s/ Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136
VANDANA MURTY ABRAMS
Georgia State Bar No. 158799
*Attorneys for Defendant*

One West Park Avenue (31401)
Post Office Box 2139
Savannah, Georgia  31402-2139
(912) 232-7000 - telephone
(912) 233-0811 - fax
ldbradley@bouhan.com
vmabrams@bouhan.com